Joshua D. Wayser (SBN 152711)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
Telephone:    310.788.4400
Facsimile:    310.788.4471

Attorneys for Federal Deposit Insurance Corporation,
as receiver for Tamalpais Bank

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SANTA ROSA DIVISION**

| | |
|---|---|
| In re<br><br>TAMALPAIS BANCORP,<br>f/k/a EPIC BANCORP,<br><br>        Debtor.<br>_____<br><br>LINDA S. GREEN, in her capacity as<br>chapter 7 trustee for TAMALPAIS BANCORP,<br>f/k/a EPIC BANCORP,<br><br>        Plaintiff,<br><br>v.<br><br>FEDERAL DEPOSIT INSURANCE<br>CORPORATION, in its capacity as<br>receiver for Tamalpais Bank,<br><br>        Defendant. | Chapter 7<br>Case No. 10-13707-AJ<br>Hon. Alan Jaroslovsky<br><br><br><br><br>Adv. Pro. No. 10-01168<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER FOR TAMALPAIS BANK, TO DISMISS COUNT II OF AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1)**<br><br><u>Hearing</u><br>Date: June 3, 2011<br>Time: 10:00 a.m.<br>Location: United States Bankruptcy<br>         Courthouse<br>         99 South E Street<br>         Santa Rosa CA 95404 |

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ....................................................................................................................2

    A. Bank's Relationship to Debtor.................................................................................2
    B. Tamalpais Bank Receivership..................................................................................3
    C. The Amendment to the Internal Revenue Code......................................................4
    D. Bancorp's Failure to File Administrative Claim Against Receivership .................5
    E. Debtor's Bankruptcy Filing .....................................................................................5
    F. Trustee's Adversary Proceeding ..............................................................................6

II. ARGUMENT: This Case Must Be Dismissed With Prejudice Because This Court Does Not Have Subject Matter Jurisdiction Over Trustee's Claims ...................................7

    A. FIRREA's Mandatory Claims Process ...................................................................8
    B. Failure to Comply with FIRREA's Mandatory Claims Process Deprives Courts of Subject Matter Jurisdiction Over Unasserted Claims ..................9
    C. The Jurisdictional Bar Applies To Trustee's Claims.............................................10
    D. No Court Has Jurisdiction Over Trustee's Claims ................................................12
    E. Because No Court Has Jurisdiction Over Trustee's Ownership Claims, Count II of the Complaint Must Be Dismissed, With Prejudice............................13

III. CONCLUSION...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*A. Maher v. Harris Trust and Savings Bank*, 75 F.3d 1182, 1190 (7th Cir. 1996) .............................. 9

*Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999) ....................... 9

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989) .......................................... 8

*Brady Development Co., Inc. v. Resolution Trust Corp.,* 14 F.3d 998, 1005 (4th Cir. 1994) ............ 16

*Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) .............................................. 12

*Capital Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669 (S.D.N.Y. 1991) ................................... 14

*Fed. Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 136 (3d Cir. 1991) ............. 11

*Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995) ........................................ 9

*Henderson v. Bank of New England,* 986 F.2d 319 (9th Cir. 1993)("Section 1821(d)(13)(D) .......... 11

*In re Am. Mortgage & Inv. Servs., Inc. v. Resolution Trust Corp.*, 141 B.R. 578, 582-83
 (Bankr. D.N.J. 1992) .............................................................................................................. 14

*In re Lewis*, 398 F.3d 735, 744 (6th Cir. 2005) ................................................................................. 12

*Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc*., 2011 WL 398206 (9th Cir. Feb. 11,
 2011) ........................................................................................................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ...................................... 7

*Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) .................................................................................... 9

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ............................................................. 9

*Maher v. Fed. Deposit Ins. Corp.*, 441 F.3d 522, 525 (7th Cir. 2006) .............................................. 12

*Marquis v. Fed. Deposit Ins. Corp.*, 965 F.2d 1148, 1152 (1st Cir. 1992) ........................................ 17

*Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir. 1992) ........................................... 12

*Nat'l Union Fire Ins. v. City Sav. FSB*, 28 F.3d 376, 393 (3d Cir. 1994) ......................................... 13

*O'Melveny & Meyers v. Fed. Deposit Ins. Corp.*, 114 S.Ct. 2048, 2054 (1994) ................................ 3

*Praxis Props., Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 (3d Cir. 1991) ...................................... 11

*Resolution Trust Corp. v. Elman*, 761 F.Supp. 245, *aff'd* 949 F.2d 624 (2d Cir. 1991) .................... 14

Katten
KattenMuchinRosenmanLLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel  310.788.4471 fax

*Resolution Trust Corp. v. Liberty Homes, Inc.*, 5 F.3d 547 (10th Cir. 1993) .................................. 16

*Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ........................................... 11

*Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) ........................... 12

*Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) .......................................................... 8

*Sharpe v. Fed. Deposit Ins. Corp.*, 126 F.3d 1147 (9th Cir. 1997) ............................................ 10

*Siemonsma v. Mut. Diversified Emples. Fed. Credit Union*, 2010 U.S. Dist. LEXIS 123489, *2 (C.D. Cal. 2010) .................................................................................................. 8

*Simon v. Fed. Deposit Ins. Corp.*, 48 F.3d 53, 56 (1st Cir. 1995) ............................................. 11

*Stamm v. Paul*, 121 F. 3d 635 (11th Cir. 1997) ................................................................ 12

*Stumpf v. Albracht*, 982 F.2d 275, 277 (8th Cir. 1992) ....................................................... 15

*Taylor v. ANB Bancshares, Inc.*, 2009 WL 5730500 *8 (W.D. Ark. Dec. 15, 2009) .......................... 8

*Tri-State Hotels, Inc. v. Fed. Deposit Ins. Corp.*, 79 F.3d 707, 714-15 (8th Cir. 1996) .................. 14

*Washington Bancorp v. Fed. Deposit Ins. Corp. (In re Washington Bancorp)* ................................. 14

*Wilderness Society v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987) .......................................... 9

*Wujick v. Dale & Dale, Inc.*, 43 F.3d 790 (3d Cir. 1994) ...................................................... 16

**Statutes**

11 U.S.C. § 101 .............................................................................................................. 6

12 U.S.C. § 1821(d)(2) ................................................................................................... 3

12 U.S.C. § 1821(d)(3) ................................................................................................... 9

12 U.S.C. § 1821(d)(4) ................................................................................................... 4

12 U.S.C. § 1821(d)(5) .......................................................................................... 3, 4, 15

12 U.S.C. §§ 1821(d)(6) ................................................................................................ 10

12 U.S.C. §§ 1821(d)(7) ................................................................................................ 10

12 U.S.C. §§ 1821(d)(8) ................................................................................................ 10

12 U.S.C. § 1821(d)(13) ....................................................................................... 10, 13, 14

Federal Deposit Insurance Corporation ("FDIC"), as Receiver for Tamalpais Bank ("FDIC–R"), by and through its undersigned counsel, files this Memorandum of Points and Authorities in Support of its Motion to Dismiss Count II of the Amended Complaint[1] filed by Linda S. Green, in her capacity as the chapter 7 trustee of Tamalpais Bancorp ("Trustee") pursuant to Federal Rule of Civil Procedure 12(b)(1).[2]

In count II of Trustee's amended complaint she seeks a declaratory ruling that approximately $9.7 million in federal tax refunds are not property of the receivership for Tamalpais Bank ("Bank"), and that the tax refunds are instead property of the bankruptcy estate of Tamalpais Bancorp ("Bancorp"), the former holding company for Bank.[3] Trustee's claims in count II against FDIC-R boil down to one core issue – does FDIC-R or Bancorp's bankruptcy estate own the tax refunds? As detailed below, FDIC-R is the owner of the tax refunds.

---

[1] Trustee initially filed her complaint asserting only one count seeking a declaratory judgment for the ownership of the tax refunds. FDIC-R filed a motion to dismiss the entire complaint. Shortly thereafter, Trustee filed an amended complaint adding another count objecting to FDIC-R's proof of claim. FDIC-R files this motion to dismiss count II of Trustee's amended complaint which seeks declaratory judgment for the ownership of the tax refunds. Contemporaneously herewith, FDIC-R is filing its answer to count I of the amended complaint and a counterclaim.

[2] The submission of the Motion shall not in any way constitute a submission by FDIC-R to the jurisdiction or authority of any court for the resolution of any regulatory matter involving Bancorp and FDIC-R, nor is the Motion an admission that any court is the appropriate forum for disputes between FDIC-R and Bancorp. The filing of this Motion shall not constitute a waiver or consent by FDIC-R of any: (a) right to Sovereign Immunity, whether FDIC-R is acting in its capacity as receiver or otherwise; (b) right to have any and all final orders in any and all non-core matters entered only after de novo review by a United States District Court Judge; (c) right to trial by jury in any proceeding as to any and all matters so triable therein, whether or not the same be designated legal or private rights, or in any case, controversy or proceeding related thereto, whether or not such jury trial right is pursuant to statute or the United States Constitution; or (d) other rights, claims, actions, defenses, setoffs, recoupments or other matters to which FDIC-R is entitled under any agreements or at law or in equity or under the United States Constitution. All of the foregoing rights are expressly reserved and preserved, without exception and without the intention or purpose of conceding jurisdiction in any way by this filing or by any other participation in this matter or in this case. FDIC-R expressly reserves all rights at law and equity to assert the preemption of the Bankruptcy Court's jurisdiction and the exclusive jurisdiction provided under Title 12, as applicable, with respect to FDIC-R.

[3] Count I of Trustee's complaint seeks to disallow FDIC-R's proof of claim against Bancorp to the extent (a) FDIC-R asserts ownership of the refunds, (b) asserts that its claim is entitled to priority and administrative status, and (c) the claims are not established by a preponderance of the evidence. If this Court dismisses Count II of the complaint, FDIC-R asserts that any substantive rulings resulting therefrom will collaterally estop Trustee from relitigating her assertions in Count II with regard to her objection to FDIC-R's proof of claim.

Katten
KattenMuchinRosenman LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067-3012
310.788.4400 tel 310.788.4471 fax

However, pursuant to Title 12 of the United States Code, no court has jurisdiction over Trustee's claims regarding the ownership of the tax refunds because Bancorp failed to comply with the mandatory administrative claims process established under Title 12. Title 12 provides that a party, such as Bancorp, who fails to submit an administrative claim to FDIC-R is forever barred from pursuing litigation against FDIC-R on account of such claim. Here, Bancorp's failure to timely submit an administrative claim is binding on Trustee. Therefore, as a matter of law, Trustee's claims regarding ownership of the Refunds must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). After FDIC-R initially filed a motion to dismiss this case based on the same claims set forth herein, Trustee amended her complaint. However, even with the benefit of having reviewed FDIC-R's motion to dismiss, Trustee's amended complaint fails to provide any facts that would save her claims to ownership of the refunds from dismissal. Because no set of facts can or have been alleged by Trustee, even with the opportunity to amend her complaint, dismissal of count II of the complaint with prejudice is appropriate in this case.

## I. BACKGROUND

### A. Bank's Relationship to Bancorp.

As noted above, Bancorp was Bank's holding company and sole shareholder. Bancorp did not have its own operations and substantially all of its revenue was obtained from dividends declared and paid by Bank. Bank and Bancorp were parties to a tax sharing agreement dated January 1, 2005 (the "TSA"). Bank and Bancorp entered into the TSA to facilitate the filing of consolidated federal income tax returns and to provide for the allocation of tax liability between themselves. TSA (recitals).

As a result, from 2005 to 2009, Bancorp filed consolidated tax returns on behalf of itself and its two subsidiaries, Bank and one other small related entity ("Consolidated Group"). Bank, not Bancorp, paid all tax obligations directly to the appropriate taxing authorities. Based upon the

records available to FDIC-R upon its appointment as receiver, Consolidated Group never received a tax refund prior to Bancorp's bankruptcy filing.

**B.     Bank's Receivership.**

On April 16, 2010, the California Department of Financial Institutions closed Bank, and FDIC was appointed as Bank's receiver, which appointment FDIC accepted. Under federal law, specifically 12 U.S.C. §§ 1821(d)(2)(A)(i) and (B), FDIC-R, upon its appointment as receiver, succeeded to all rights, titles, powers and privileges of Bank. This means, among other things, that FDIC-R effectively stepped into the shoes of Bank and assumed both its assets and liabilities and operates as its successor. 12 U.S.C. § 1821(d)(2)(B); *see also, O'Melveny & Meyers v. Fed. Deposit Ins. Corp.*, 114 S.Ct. 2048, 2054 (1994) (holding that, under the language of § 1821(d)(2)(A), FDIC "steps into the shoes" of the failed institution).

Importantly, through the Financial Institutions Reform, Recovery and Enforcement Act, Public Law 101-73, 103 Stat. 183 (1989) (codified in various sections of Title 12) ("<u>FIRREA</u>"), Congress enacted a comprehensive and detailed statutory scheme which allows FDIC, in its capacity as receiver, to perform its duties as a receiver, conserve and preserve a failed institution's assets, liquidate those assets when appropriate, and use the proceeds of liquidation to make distributions to the institution's valid creditors.[4] *See* 12 U.S.C. §§ 1821(d)(2)(A)(ii), 1821(d)(2)(B) and (E).

As an important part of FDIC-R's comprehensive scheme for liquidating assets and winding up failed financial institutions, Congress also created a statutory procedure for the orderly and efficient processing of all claims asserted against a failed bank receivership, as well as, claims seeking a determination of rights with respect to assets of a receivership. That administrative claims

---

[4] FDIC-R is also required to minimize any loss to the Federal Deposit Insurance Fund. In this case, as of the date of Bank's closing, FDIC-R estimates that the claims against Bank were approximately $149 million and the ultimate cost to the Federal Deposit Insurance Fund, as a result of Bank's failure, will be approximately $81.1 million. *See* Tamalpais Bank - Receivership Balance Sheet Summary (Unaudited), available at the FDIC's website at the following address: http://www2.fdic.gov/drrip/bal/balancesheet.asp.

3
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

process, set forth in 12 U.S.C. §§ 1821(d)(3) through (13), centralizes the initial consideration and resolution of claims against a failed financial institution by requiring that all claims be submitted to FDIC, in its capacity as a receiver, by a date certain that is established by FDIC (i.e., the "claims bar date"), <u>before</u> a party may commence litigation against FDIC. FDIC-R then is allowed up to 180 days to review each claim, and grant or deny those claims (in whole or in part), without the unnecessary delay and expense of actual litigation. *See* 12 U.S.C. § 1821(d)(5)(A)(i); *see also* H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess., at 418-19, *reprinted in* 1989 U.S.C.C.A.N. 86, 215 (stating that § 1821(d)(5)(A)(i) was created to enable FDIC to dispose of the bulk of claims against failed institutions "expeditiously and fairly ... without burdening the District Courts.").

In this instance, pursuant to 12 U.S.C. § 1821(d)(4), FDIC-R established July 21, 2010 as the claims bar date for Bank's receivership (the "<u>Claim Deadline</u>"). Accordingly, any party who believed it held a claim against Bank's receivership (the "<u>Receivership</u>") or disputed the Receivership's title to assets was required to submit an administrative claim to FDIC-R no later than the Claim Deadline. In conformity with the requirements of FIRREA, FDIC-R caused notice of the Claim Deadline to be published on April 22, 2010, May 24, 2010 and June 25, 2010, in the local newspaper *Marin Independent Journal*. In addition, shortly after Bank's failure, notice of the Claim Deadline was also mailed directly to creditors appearing on Bank's books and records. As Bank's sole shareholder and holding company, Bancorp was aware of Bank's closure and the Receivership. As a result of the notices that were provided by FDIC-R, approximately 40 administrative claims were timely submitted to the Receivership.

**C.   The Amendment to the Internal Revenue Code.**

In the fall of 2009, Congress amended the Internal Revenue Code through the Worker, Homeownership and Business Assistance Act of 2009, Public Law 111-92 (the "<u>Amendment</u>"). The Amendment, which became effective on November 6, 2009 (more than five months before Bank

4
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

failed), extended the allowable time period for certain businesses to carry-back a net operating loss ("NOL") from two years to five years. The Amendment and Revenue Procedure 2009-52-4.01(3)-(4) (November 4, 2009) set September 15, 2010 as a mandatory deadline for filing an NOL carry-back election for tax years 2008 or 2009, but not both.

Prior to the September 15, 2010 deadline and prior to Bancorp filing for bankruptcy protection, FDIC-R filed, on behalf of the Receivership, an NOL carry-back election for tax year 2009 and Forms 1120X, Amended U.S. Corporation Income Tax Returns and applied for tax refunds as a result of Bank's income and losses from prior years amounting to approximately $9.7 million. Bancorp also filed a carry-back election and tax refund on Form 1139 Corporation Application for Tentative Refund for the Consolidated Group as a result of Bank's income and losses. The refunds sought by FDIC-R and Bancorp are a direct result of the NOL carry-back election of Bank and Bank's income and losses, not the losses or income of Bancorp. Nevertheless, Trustee, on behalf of Bancorp's bankruptcy estate, seeks a windfall and asserts an interest in the $9.7 million in tax refunds that are owed to FDIC-R from the Internal Revenue Service and/or state taxing authorities (together with any other tax refunds attributable to Bank's income and losses, the "Refunds").

### D. **Bancorp's Failure to File Administrative Claim Against Receivership.**

Despite the fact that Bancorp, and now Trustee, claim an interest in the Refunds, neither Bancorp nor Trustee bothered to submit an administrative claim by the July 21, 2010 Claims Deadline. Because the deadline to submit administrative claims expired long ago, Bancorp and Trustee are forever barred from submitting a claim.

### E. **Bancorp's Bankruptcy Filing.**

On September 24, 2010 (the "Petition Date"), after Bank had failed and FDIC-R and Bancorp had each submitted competing requests for the Refunds to the taxing authorities, Bancorp filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code, 11 U.S.C. §§ 101,

5

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
Case: 10-01168   Doc# 19   Filed: 04/22/11   Entered: 04/22/11 12:55:57   Page 9 of 18

*et seq.*, in the United States Bankruptcy Court for the Northern District of California (the "Bankruptcy Court"). Trustee was thereafter appointed as chapter 7 trustee for Bancorp's bankruptcy estate. Trustee has no greater rights than Bancorp and Bancorp's failure to file an administrative claim against Receivership is binding on Trustee.

### F. Trustee's Adversary Proceeding.

On November 30, 2010, over four (4) months after the Claim Deadline had already expired, Trustee filed her complaint initiating an adversary proceeding in the Bankruptcy Court in an effort to obtain a declaratory judgment regarding ownership of Refunds (the "Complaint"). [Doc. No. 1] As the Complaint indicates, Trustee asserts that pursuant to the TSA, the Refunds are not property of the Receivership and are instead property of Bancorp's bankruptcy estate, regardless of the fact that the Refunds are attributable only to Bank's net operating losses. Compl. ¶ 21 ("Any [Refunds] are property of [Bancorp's] bankruptcy estate, regardless of whether such [Refunds] are on account of taxes paid or losses incurred by [Bancorp] or its subsidiary, Bank"). Based on the foregoing, Trustee further asserts that, at most, FDIC-R is entitled to only a general unsecured claim against Bancorp's bankruptcy estate and is not entitled to the Refunds themselves. Compl. ¶¶ 10, 13, 22 and 25.

FDIC-R filed a motion to withdraw the reference of the adversary proceeding to the United States District Court for the Northern District of California (the "District Court") and concurrently therewith, requested a stay of the adversary proceeding in the bankruptcy court pending an order on the motion. Trustee agreed to the stay of the deadline for FDIC-R to respond to the Complaint until further notice. On March 9, 2011, Trustee notified FDIC-R that it had 14 days (until March 23, 2011) to respond to the Complaint. On March 21, 2011, the District Court granted FDIC-R's motion to withdraw the reference. FDIC-R timely filed a motion to dismiss the Complaint with the District Court on March 23, 2011.

6
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

On March 30, 2011, Trustee amended her complaint against FDIC-R (the "Amended Complaint"). A copy of the Amended Complaint is attached hereto as Exhibit A. The only change from the Complaint to the Amended Complaint is an additional claim against FDIC-R to disallow FDIC-R's proof of claim against Bancorp's bankruptcy estate. Both Trustee's claims in the Amended Complaint, however, essentially boil down to one core issue – does FDIC-R or Bancorp's bankruptcy estate own the Refunds. Moreover, Trustee's Amended Complaint fails to allege any facts to overcome Bancorp's failure to file an administrative claim.

On April 4, 2011, Trustee filed a motion to reconsider the Withdrawal Order (the "Motion to Reconsider"). The District Court granted the Motion to Reconsider and by order dated April 19, 2011 vacated the Withdrawal Order. Hence, FDIC-R files this Motion to Dismiss Trustee's claims in the Amended Complaint that the Bankruptcy Estate owns the Refunds with this Court.

**II. ARGUMENT: THE OWNERSHIP CLAIMS MUST BE DISMISSED WITH PREJUDICE BECAUSE NEITHER THIS COURT, NOR ANY OTHER COURT, HAS SUBJECT MATTER JURISDICTION OVER TRUSTEE'S CLAIMS.**

It is axiomatic that this Court must have subject matter jurisdiction to adjudicate Trustee's claims against FDIC-R. U.S. Const., art. III, § 2; *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Under Federal Rule of Civil Procedure 12(b)(1), a complaint must be dismissed if the court lacks subject matter jurisdiction to adjudicate the claims. Once subject matter jurisdiction is challenged, the burden of proof is placed on the party asserting that jurisdiction exists. *Siemonsma v. Mut. Diversified Emples. Fed. Credit Union*, 2010 U.S. Dist. LEXIS 123489, *2 (C.D. Cal. 2010); *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986). Thus, a court will presume lack of subject matter jurisdiction until the plaintiff proves otherwise in response to the motion to dismiss. *Siemonsma*, 2010 U.S. Dist. LEXIS 123489, *2, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Where it is clear that the plaintiff cannot amend the complaint to plead

7
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

allegations that would show the court has jurisdiction, granting a motion to dismiss without leave to amend is appropriate. *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc*., 2011 WL 398206 (9th Cir. Feb. 11, 2011) (citing *Ascon Props., Inc. v. Mobil Oil Co*., 866 F.2d 1149, 1160 (9th Cir. 1989)) (holding that "leave to amend 'need not be granted where the amendment of the complaint would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay.'"); *Taylor v. ANB Bancshares, Inc.*, 2009 WL 5730500 *8 (W.D. Ark. Dec. 15, 2009) (dismissing complaint pursuant to 12(b)(1) with prejudice where plaintiff could not have amended complaint to plead exhaustion of administrative remedies under FIRREA). "When a question of the District Court's jurisdiction is raised ... the court may inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). Because jurisdiction is a threshold question, the court may look outside the pleadings to determine if jurisdiction exists, without converting the motion to dismiss into a motion for summary judgment. *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990); *see also, Wilderness Society v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).

**A.     FIRREA's Mandatory Claims Process.**

When it enacted FIRREA, Congress created an exclusive administrative claims process for claims against or relating to failed bank receiverships. *A. Maher v. Harris Trust and Savings Bank*, 75 F.3d 1182, 1190 (7th Cir. 1996) ("The administrative claims process provided by FIRREA requires that an individual who wishes to pursue a claim against a failed institution or its assets ... present that claim to the receiver."); *see also, Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999); *Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1399 (D.C. Cir. 1995); and 12 U.S.C. § 1821(d)(3)(13). FIRREA requires that all claims against a failed bank receivership and claims seeking a determination of rights with respect to assets of a receivership be processed through FDIC's mandatory administrative claims process before a claimant, such as

Trustee, may commence litigation against FDIC, in its capacity as a receiver.  Specifically, in 12 U.S.C. § 1821(d)(13), Congress made clear that the claims process is a mandatory prerequisite to commencing litigation by withdrawing jurisdiction from all courts to hear claims against a failed institution for which FDIC has been appointed receiver:

> (D) Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i) any claim or action for payment from, **or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver**, including assets which the Corporation may acquire from itself as such receiver;  or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).  Notably, as the Ninth Circuit has recognized, jurisdiction is "otherwise provided" by 12 U.S.C. § 1821(d) only for a claimant that has actually submitted a proof of claim to FDIC-R and completed the mandatory administrative claims process. *See* 12 U.S.C. §§ 1821(d)(6)(A)(ii), (d)(7)(A), (d)(8)(C); *Sharpe v. Fed. Deposit Ins. Corp.*, 126 F.3d 1147 (9th Cir. 1997) ("The 'except as otherwise provided' language refers to the provision that allows courts jurisdiction after the administrative claims process has been completed."). Moreover, "the administrative procedure exhaustion requirement of FIRREA is statutory, not judicial," and courts "are therefore not at liberty to ignore the statutory command." *Fed. Deposit Ins. Corp. v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 136 (3d Cir. 1991).

**B.     Failure to Comply with FIRREA's Mandatory Claims Process Deprives Courts of Subject Matter Jurisdiction Over Unasserted Claims.**

Every circuit court of appeals – including the Ninth Circuit – has held that courts lack jurisdiction over claims asserted against FDIC, in its capacity as receiver, prior to exhaustion of the

administrative claims process. *See, e.g., Henderson v. Bank of New England,* 986 F.2d 319 (9th Cir. 1993)("Section 1821(d)(13)(D) strips all courts of jurisdiction over claims made outside the administrative procedures of section 1821…a claimant must therefore first complete the claims process before seeking judicial review."); *Simon v. Fed. Deposit Ins. Corp.*, 48 F.3d 53, 56 (1st Cir. 1995) ("Section 1821(d)(13)(D)(i) bars all claims against the assets of a failed financial institution which have not been presented under the administrative claims review process"); *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says ... that a claimant must first present its case to [FDIC] under the administrative procedure erected by FIRREA before seeking relief in the federal courts."); *Praxis Props., Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 (3d Cir. 1991); *Brady Dev. Co., v. Resolution Trust Corp.*, 14 F.3d 998, 1005-06 (4th Cir. 1994) ("Exhaustion of administrative remedies is a requirement for efficiently administering the massive volume of claims."); *Meliezer v. Resolution Trust Corp.*, 952 F.2d 879, 882 (5th Cir. 1992) ("[S]ection 1821(d)(13)(D) clearly establishes a statutory exhaustion requirement."); *In re Lewis*, 398 F.3d 735, 744 (6th Cir. 2005); *Maher v. Fed. Deposit Ins. Corp.*, 441 F.3d 522, 525 (7th Cir. 2006); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) ("Every court that has considered the issue has found exhaustion of FIRREA's administrative remedies to be a jurisdictional prerequisite to suit in district court."); *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991); *Stamm v. Paul*, 121 F. 3d 635 (11th Cir. 1997); and *Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1400 (D.C. Cir. 1995).[5]

---

[5] The Ninth Circuit's holding in *Parker N. Am. Corp. v. Resolution Trust Corp. (In re Parker N. Am. Corp.)*, 24 F.3d 1145 (9th Cir. 1994) that the FIRREA claims process does not divest a bankruptcy court of jurisdiction over a preference proceeding is inapplicable to this case as it was narrowly tailored to apply in preference proceedings. As a result, it is inapplicable in non-preference cases, particularly when the administrative claims bar date passed prior to a bankruptcy filing. In addition, criticism of the *Parker* case has been acknowledged by the Ninth Circuit itself in *McCarthy v. Fed. Deposit Ins. Corp.*, 348 F.3d 1075, 1078-79 (9th Cir. 2003) (quoting *Freeman v. Fed. Deposit Ins. Corp.*, 56 F.3d 1394, 1401-02 (D.C. Cir. 1995), which stated that any finding that the FIRREA claims process does not divest a bankruptcy court of jurisdiction does not follow the statutory mandate of 12 U.S.C. § 1821(d)(13)(D)). The Sixth Circuit is the most

10
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
Case: 10-01168   Doc# 19   Filed: 04/22/11   Entered: 04/22/11 12:55:57   Page 14 of 18

## C. The Jurisdictional Bar Applies to Trustee's Claims.

By its terms, the jurisdictional bar set forth in 12 U.S.C. § 1821(d)(13)(D) deprives courts of subject matter jurisdiction over four types of claims and actions:

> (i) claims for payment from assets of any depository institution for which FDIC has been appointed receiver;
>
> (ii) actions for payments from assets of such depository institutions;
>
> (iii) actions seeking a determination of rights with respect to the assets of such depository institutions; and
>
> (iv) a claim relating to any act or omission of such institution or FDIC as receiver.

*Am. First Fed.*, 198 F.3d at 1263 (citing *Nat'l Union Fire Ins. V. City Sav. FSB*, 28 F.3d 376, 393 (3d Cir. 1994). Trustee's claims undeniably seek "a determination of rights with respect to the assets" of Bank, a failed bank for which FDIC has been appointed receiver. Bank paid all of the taxes, incurred all of the losses and, as a result, owns all of the Refunds that are recovered from taxing authorities by or on behalf of the Consolidated Group. Trustee does not dispute these facts in her Complaint. As a result, it cannot be argued that Trustee's attempts to deprive FDIC-R of these valuable assets is not an "action" that seeks a "determination of rights with respect to the assets" of Bank.

The fact that the Complaint seeks relief in the form of a declaratory judgment does not change this analysis. Declaratory judgment actions, such as this one, are barred by section 1821(d)(13)(D) when the relief they seek falls within the scope of that provision. *See Tri-State Hotels, Inc. v. Fed. Deposit Ins. Corp.*, 79 F.3d 707, 714-15 (8th Cir. 1996) ("Tri-State's request for declaratory relief likewise does not render the exhaustion requirements inapplicable."); *Nat'l Union*,

---

recent circuit to address the issue and found that FIRREA's administrative claims process and the jurisdictional bar found therein apply in bankruptcy cases. *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735 (6th Cir. 2005).

28 F.3d at 385; *Washington Bancorp v. Fed. Deposit Ins. Corp. (In re Washington Bancorp)*, C.A. No. 95-1340, 1996 WL 148533, at *9 (D.D.C. Mar. 19, 1996) (granting motion to dismiss complaint for declaratory relief against FDIC as receiver pursuant to jurisdictional bar). The declaratory relief sought by Trustee in her Complaint plainly seeks "a determination of rights with respect to assets of a depository institution for which the [FDIC] has been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i).

Moreover, the administrative claims process applies to actions seeking a determination of whether an asset, such as the Refunds, are property of a receivership. *See, e.g., In re Am. Mortgage & Inv. Servs., Inc. v. Resolution Trust Corp.*, 141 B.R. 578, 582-83 (Bankr. D.N.J. 1992) (finding FIRREA's claims administration procedure applies and deprives courts of jurisdiction even where the failed institution's actual ownership over the asset is in dispute); *Capital Data Corp. v. Capital Nat. Bank*, 778 F.Supp. 669 (S.D.N.Y. 1991) (same); *Resolution Trust Corp. v. Elman*, 761 F.Supp. 245, *aff'd* 949 F.2d 624 (2d Cir. 1991) (same). Indeed, based upon the above, Trustee's claims are clearly subject to FIRREA's administrative claims process.

### D. No Court Has Jurisdiction Over Trustee's Claims.

Trustee's claims in this action represent an impermissible end-run around the exclusive receivership claims process established in FIRREA. Despite its knowledge of potential Refunds in the fall of 2009 when the Amendment was enacted and its knowledge of the Receivership, Bancorp failed to submit an administrative claim to the Receivership. Any claims submitted now are time-barred. 12 U.S.C. §§ 1821(d)(5)(C) (claims not timely submitted "shall be disallowed and such disallowance shall be final"), *see also, Freeman v. FDIC*, 56 F.3d 1394, 1400 (D.C. Cir. 1995) ("where a claimant has ... failed to initiate an administrative claim within the filing period, the claimant forfeits any right to pursue a claim against the failed institutions' assets in any court"). And, such bar is binding on Trustee. *See, e.g., Stumpf v. Albracht*, 982 F.2d 275, 277 (8th Cir. 1992)

(holding that the fact that the trustee, rather than the debtor, filed the case cannot revive an issue that is barred by the statute of limitations). No court has jurisdiction over Trustee's claims because Bancorp failed to exhaust FIRREA's administrative claims process.

E. **Because No Court Has Jurisdiction Over Trustee's Ownership Claims, Count II of the Complaint Must Be Dismissed, With Prejudice.**

It follows from the mandatory nature of the administrative claims process established by FIRREA (and a court's corresponding lack of jurisdiction), that actions commenced against FDIC-R must be dismissed unless a claimant has timely submitted an administrative claim to FDIC-R.

Indeed, courts are unanimous in holding that claims asserted against FDIC-R must be dismissed if the claimant failed to comply with the mandatory claims process. *See, e.g.*, *Meliezer*, 952 F.2d 883 (affirming dismissal of plaintiffs' claims because they "failed to exhaust the administrative remedies as directed by FIRREA; the district court lacked subject matter jurisdiction over their claims."); *Resolution Trust Corp. v. Liberty Homes, Inc*., 5 F.3d 547 (10th Cir. 1993) (affirming district court's dismissal of counterclaims based on lack of subject matter jurisdiction due to counterclaimant's failure to submit administrative claim to RTC); *Wujick v. Dale & Dale, Inc.*, 43 F.3d 790 (3d Cir. 1994) ("Since the state court also lacked subject matter jurisdiction for the same reason, a remand by the district court would be a vacuous act. We will therefore direct the district court to dismiss the claims against RTC."); *Brady Development Co., Inc. v. Resolution Trust Corp.,* 14 F.3d 998, 1005 (4th Cir. 1994) (affirming the district court's dismissal of action due to a lack of subject matter jurisdiction based on plaintiff's failure to submit an administrative claim); *Mustang Partners*, 946 F.2d at 106 ("[W]e conclude that [Plaintiff's] right to continue pursuing its pending lawsuit is dependent upon its compliance with FIRREA's claims provisions."); *Marquis v. Fed. Deposit Ins. Corp.*, 965 F.2d 1148, 1152 (1st Cir. 1992) ("[w]here a claimant has been properly notified of the appointment of a federal insurer as receiver and has nonetheless failed to initiate an

13
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

administrative claim within the filing period, the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court."). Moreover, there is no possibility for Trustee to amend the Complaint to plead allegations that would show that this Court, or any court, has jurisdiction over the ownership dispute, which is evidenced by Trustee's failure to include any such claims in her newly Amended Complaint filed after FDIC-R filed its Motion to Dismiss the Complaint. As a result, the ownership claims must be dismissed with prejudice.

Here, Bancorp did not comply with the mandatory claims process. Because neither Bancorp nor Trustee submitted a timely proof of claim to FDIC-R as statutorily required, neither this Court nor any other court has jurisdiction to hear any of the ownership claims asserted against FDIC-R in this case. Trustee has forever lost her right to pursue the bankruptcy estate's alleged ownership claims against FDIC-R, and FDIC-R is entitled to the immediate dismissal of count II of the complaint -- with prejudice -- pursuant to 12 U.S.C. § 1821.

### III. CONCLUSION

As set forth above, the ownership claims must be dismissed because no Court has jurisdiction over such claims as a result of Bancorp's failure to timely submit an administrative claim to FDIC-R as required under Title 12.

WHEREFORE, FDIC-R respectfully requests this Court to dismiss count II of the complaint with prejudice and grant it such other relief it deems just.

Dated: April 22, 2011             /s/ Joshua D. Wayser

*Counsel for FDIC-R*